IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20 CR 00559 |
| Plaintiff | : | JUDGE DONALD NUGENT |
| vs. | : | |
| DEVONTE L. FELLOWS, | : | DEVONTE L. FELLOWS'S SENTENCING MEMORANDUM |
| Defendant | : | |

Now comes Defendant, through his attorney, Attorney, John P. Luskin, and respectfully submits for the Court's consideration factors relevant to the sentence to be imposed upon a defendant pursuant to 18 U.S.C., § 3553(a), 18 U.S.C. §3582 (a), 18 U.S.C. §3661 and additional facts relevant to the instant case and the defendant's history.

## I. LAW

After the Federal Sentencing Guidelines were made advisory by the United States Supreme Court, as it relates to the sentencing of the defendant, it is respectfully submitted that in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held those sentencing guidelines are advisory, not mandatory, and that other factors set forth in 3553(a) must be considered in fashioning the appropriate sentence. See Booker at 790 (sentencing guidelines are but one of many statutory concerns that federal courts must take into account during sentencing determination).

In United States v. Ranum, 353 F. Supp.2d 984 (E.D. Wis. 2005) the court imposed a sentence *lower* than that recommended by Guidelines, stating that, while the court agreed that it must seriously consider Guidelines, ***"Booker is not an invitation to do business as usual."***

-1-

(Emphasis added).

In United States v. Myers, 353 F. Supp.2d 1026 (S.D. Iowa, 2005) the Court logically stated *"[*t]o treat the Guidelines as presumptive is to concede the converse, i.e., that any sentence imposed outside the guideline range would be presumptively unreasonable in absence of clearly identified factors . . . making the Guidelines, in effect, still mandatory."

The Booker decision essentially establishes that the guidelines should merely be treated as one of the factors to be considered. See U.S. v. Booker, at 790. These factors include:
> 1. The nature and circumstances of the offense and the history and characteristics of the Defendant.
> 2. The need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the Defendant; and (D) to provide the Defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner.
> 3. The kinds of sentences available.
> 4. The advisory guideline range.
> 5. Any pertinent policy statements issued by the Sentencing Commission.
> 6. The need to avoid unwarranted sentence disparities.
> 7. The need to provide restitution to any victims of the offense.[1]

**B. 18 U.S.C. Section 3553(a)**

Section 3553(a) states that the nature and circumstances of the offense and the history and characteristics of the defendant are to be considered in determining a sentence. Further, "the court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes [of sentencing]." 18 U.S.C. Section 3553(a)(emphasis added).

In determining the particular sentence, courts must consider all the factors set forth in:

18 U.S.C. 3553 states in part:

---

[1] **See: Note, Booker and Our Brave New World: *The Tension Among the Federal Sentencing Guidelines, Judicial Discretion, and a Defendant's Constitutional Right to Trial by Jury*, 53 Cleve. St. L. Rev. 657 (2005-06).**

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other Correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced. [FN1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Thus, Section 3553 (a) places the guidelines on equal footing with the other factors and the overriding principle and basic mandates of 3553(a) require district courts to impose a sentence "sufficient, but not greater than necessary, . . . " while giving consideration to "the nature and circumstances of the offense and the history and characteristics of the defendant," i.e., retribution, deference, incapacitation, and rehabilitation, the defendant, Troy Pinnock, hereby presents the following for the Court's consideration in determining the appropriate sentence to comply with the goals, particularly with respect to the defendant's limited role in the drug conspiracy in this case.

## II. INTRODUCTION

**A. Procedural History**:

On September 24, 2020, the defendant was named in a one-count Indictment filed in the Northern District of Ohio. Count 1 charged the defendant with Distribution of Fentanyl on April 26, 2019, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). As a result of the defendant's distribution of Fentanyl in Count 1, death did result from the use of Fentanyl, in violation of the Enhanced Penalty provisions of 21 U.S.C. § 841(b)(1)(C).

On March 25, 2022, the defendant was found guilty by a jury trial to Count 1 of the Indictment with an Enhanced Penalty less than 21 U.S.C. § 841(b)(1)(C) for death resulting from the use of the controlled substance.

The Cuyahoga Falls Police Department was dispatched to 746 Adam Run Drive for a suspected overdose. Officers located, Austin Thompson, on the floor in the upstairs bathroom. The Austin Thompson's father and two other individuals were performing cardiopulmonary resuscitation on the Austin Thompson, which was unsuccessful. Officers learned that the Austin

Thompson was a drug user, and Emergency Medical Services had administered Narcan to Austin Thompson. Officers found an unknown **white** substance in a bag, and the Austin Thompson's wallet and cell phone in the bathroom. The Austin Thompson was transported to Western Reserve Hospital, where he was pronounced dead approximately one hour after arrival. Officers collected the bag as evidence.

The police were unable to collect the unknown powder from the floor. Laboratory results revealed the substance contained in the bag was less than 0.10 grams of acetyl Fentanyl and Fentanyl. The preliminary toxicology results revealed that Austin Thompson **had a significant amount of Fentanyl in his system**.

The investigation revealed that when the Austin Thompson returned home on April 26, 2019, he watched a movie with his sisters until about 9:30 p.m. The Austin Thompson went to the bathroom, and he was found unresponsive approximately one hour later. The Austin Thompson's father was forced to kick the bathroom door open to gain access to the Austin Thompson. His father performed CPR, and his sister dialed 911. After the Austin Thompson was pronounced dead, **his family refused to sign a consent for officers to search their residence**.

Police interviewed the Austin Thompson's father regarding the Austin Thompson's drug history. He informed officers that the Austin Thompson had developed an opiate problem after he underwent knee surgery in the eighth grade. The Austin Thompson had recently returned home from an alcohol and drug rehabilitation center in California. Based on the Austin Thompson's history and items found at the scene, **officers suspected the incident to be an accidental overdose.** On April 29, 2019, the Cuyahoga Falls Police Department received information that an individual known as Steven Frederick supplied the Fentanyl to the Austin Thompson. According

to the reporting source, the rumor was spread over the previous weekend at Woodridge High School's prom. However, the investigation revealed that information was inaccurate.

On May 22, 2019, Cuyahoga Falls officers gained access to the Austin Thompson's cell phone records. There were numerous text messages and phone calls with the phone number associated with the defendant on April 26, 2019. Further, the Austin Thompson's father identified bank records from that same date that showed an $80 withdrawal from an ATM on Kinsman Road in Cleveland. Cell phone analysis confirmed the Austin Thompson used AT&T cell towers near the defendant's residence in Cleveland 19 times between 4:47 p.m. and 5:32 p.m. on April 26, 2019. The Austin Thompson also had other text messages on his phone; however, those messages appeared to be prior drug transactions. Officers also located text messages between Frederick and the Austin Thompson from April 26, 2019. Their conversation surrounded drug use, and Frederick asked the Austin Thompson if he had enough to share. The Austin Thompson did not respond to the text message.

Subsequently, a subpoena for the defendant's cell phone records was prepared, and a search warrant for the defendant's cell phone records was signed on August 19, 2019. On August 19, 2019, Cuyahoga Falls officers met with the defendant at the University of Akron and seized his cell phone.

The Summit County Medical Examiner's Office ruled the cause of death for the Austin Thompson was acute Fentanyl toxicity. On September 16, 2019, Cuyahoga Falls officers interviewed the defendant. The defendant admitted that the text messages on his phone pertained to a drug deal between him and the Austin Thompson. The defendant initially told officers that he sold Xanax to the Austin Thompson. However, officers questioned him further, and the defendant changed his

response to cocaine but eventually admitted the drugs were Fentanyl. The defendant told officers he found the bag of drugs at a friend's residence, and he previously sold drugs to the Austin Thompson.

On June 24, 2020, Cuyahoga Falls officers interviewed Frederick. Frederick admitted that he used drugs with the Austin Thompson. Frederick informed officers that the Austin Thompson purchased drugs from a new dealer who had "good shit." Frederick and the Austin Thompson planned to use drugs together on April 26, 2019; however, the Austin Thompson stopped responding to Frederick, and the Austin Thompson never picked up Frederick, as planned. Frederick suspected that the Austin Thompson met his new dealer at work.

Officers reviewed the drugs found at the time of the Austin Thompson's death. The investigation revealed that the defendant and the Austin Thompson discussed the color of the Fentanyl being blue; however, officers identified the Fentanyl as being grey. The defendant was federally arrested by the Cleveland Metro Parks Police Department on October 14, 2020.

**B. SOCIAL HISTORY**:

Devonte Larvelle Fellows was born on August 7, 1995, in Cleveland, Ohio, to a relationship between Rochelle Austin and Larvell Fellows. The defendant's mother resides in University Heights, Ohio, and she is employed in the home health care field and works for Amazon on a part-time basis. She has been married to Jonathan McCombs since approximately 2017 or 2018. The defendant's father resides in Cuyahoga Falls, and he is self-employed. The defendant's father has been married to Lashawrida Fellows since approximately 2012. Mrs. Fellows is employed with Summit County.

The defendant was raised by his father and his paternal grandparents. The defendant's grandmother resided in an area that was filled with violence and drug activity. He stated that he witnessed numerous shootings during his childhood. The shootings happened regularly, and he considered them "part of the neighborhood." The defendant reported that he lost many friends due to gun violence. The defendant's father moved back and forth between Akron and Cuyahoga Falls. The defendant reported that he was always properly provided for, and he was never abused or neglected. He noted that his mother was not involved in his life until he was 17 years old. The defendant was unable to explain why his mother was not involved in his childhood; however, he stated that she reached out to him when he was 17 years old, and they built a relationship at that time. The defendant's brother, Antwon, was convicted of Attempted Aggravated Robbery in Cuyahoga County Common Pleas Court. He was sentenced to three years custody on October 7, 2020. The defendant's siblings, Dasia and Elijah, reside with their mother, and the defendant's sister, Amiya, resides with her father. The defendant's support system is comprised of his siblings, his father, his grandmother, Elzatia Fellows, and his aunt, Cassandra Fellows. The defendant has never been married, and he does not have any children. Prior to being arrested for the instant offense, the defendant helped raise his niece. The defendant babysat her, fed her, and transported her to school and extracurricular activities.

At the time of the defendant's arrest in the instant offense, he resided at his grandmother's residence located at 3989 Martin Luther King Junior Drive in Cleveland. The defendant reported that he had resided at his grandmother's residence since 2018. The defendant would return to his grandmother's residence upon his release from custody.

The defendant's aunt reported that the defendant witnessed gun violence during his childhood. She noted that the defendant's father was previously involved in criminal activity. The defendant's father was a marijuana dealer, and Police executed a search warrant at his residence in 2006. The defendant was asleep at the time of the search. The defendant's father served six to nine months imprisonment, and his stepmother served approximately three months imprisonment. During that time, the defendant resided with his aunt for a brief period in Cleveland. However, she did not want to disrupt the defendant's schooling, so the defendant moved in with another family member who resided in the Cuyahoga Falls School District. The defendant's aunt stated that Summit County Children and Family Services were involved due to the defendant's father's arrest. The defendant's father was previously employed as a case manager; however, he is now self- employed and owns his own trucking business. The defendant's aunt believed the defendant suffered from post-traumatic stress syndrome as a result of a search warrant being executed at his father's residence.

The defendant first smoked marijuana when he was 12 years old. His use increased when he was in high school, and he smoked marijuana daily for a few years. He last smoked marijuana in 2020. The defendant did not believe he had ever been addicted to marijuana because he had the ability to refrain from using the drug. The defendant first consumed alcohol when he was 16 years old. He last consumed alcohol in 2020, and his use was limited to the weekends. He reported that he had never been addicted to alcohol. The defendant described himself as "not a big drug user." However, he felt he could benefit from participating in a drug treatment program.

### C. FACTUAL HISTORY:

Not to demean the serious of the situation, but if not for the Austin Thompson behavior, Fellows may not be in this situation. Fellows does not want to return to Cuyahoga Falls but for the instance of the Austin Thompson. An old school chum, begging him to sell him Fentanyl. Ohio, upon his release, and he would like to reside with family members in the State of Texas.

Additionally, Fellows would benefit from mental health treatment, alcohol and drug treatment, and he will need assistance obtaining steady employment and housing in the future.

Fellows has spoken to me about going to school to get his CDL and start driving a truck and be his own man. That is what he decided he wants to do. Being locked up has made him realize that doing drugs and selling them to support his habit is not the way to live. Getting clean and going to get his CDL is what direction he has decided to do. He wants to make something of himself and not sit in jail and do nothing. He is remorseful and sorry for the trouble he caused.

### C. SUMMARY:

Counsel is of the humble opinion that if done in this fashion this Honorable Court's sentence will achieve the goals of sentencing under section 3553(a).

The defendant has accepted responsibility for his actions and shows extreme remorse.

My whole life has been messed up with the drinking and drugs Right before I got arrested, I started to talk with my father. What he said about leaving this kind of life behind made sense. He talked about me going to school to get my CDL and start driving a truck and be my own man. That is what I decided I want to do.

"Being locked up has made me realize that doing drugs and selling them to support my habit is not the way to live. Getting clean and going to get my CDL is what I want to do. I want to leave this life behind me, I want to get my CDL and get my own truck and be my own boss. I want to make something of myself and not sit in jail and do nothing. I am sorry for the trouble I have caused and if you let me go on probation, I will show you I will get my CDL and be someone not just another addict.

In addition to accepting responsibility for his conduct, the defendant regrets the choices he has made and is also extremely remorseful for his part in this action. As a matter of fact, he has shown extreme remorse throughout this case. Fellows understands the implication of his unlawful actions and its effect in his life and his family. He had more than twelve (12) months to reflect on the consequences of his conduct and it is unlikely that he will commit a crime in the future.

He realizes that because of his conduct, he will continue to have to prove himself to others for the rest of his life.

In looking at the nature and circumstances of the present offense and the history of the defendant, the Court should evaluate the following factors:

1.) Fellows has accepted responsibility for his actions and in an expeditious fashion. He understands the seriousness of the crime he has committed and expressed his sincere remorse and apology.

2.) He has cooperated with the authorities by providing complete and truthful information of his involvement to the best of his knowledge. The defendant might be eligible for safety valve under USSG §5C1.2.

3.) The defendant's criminal history is scored as three (3), putting him in a category II. The defendant is a mere 26 years of age. Fellows is an extremely likeable individual. Although, he does not wish to demean the seriousness of this action. He readily admits that he engaged in this conduct, as it is all he knew how to do. Fellows understands the wrongfulness of his actions. He fully and without reservation admits to his actions and is fully responsible for this.

Fellows requests this Court to consider his remorse, the characteristic pitfalls and familial life during his youth and formative years. We beg this Honorable Court to take all these unique factors into account when considering the appropriate sentence.

### D. THE RISK OF RECIDIVISM OF THE DEFENDANT

The second factor to be evaluated by the Court is to assess the need for the sentence imposed and the risk of re-offending of the defendant. Fellows acknowledges the seriousness of his actions and understands the period of incarceration he has been doing and will do. Fellows acknowledges that his lackadaisical behavior toward his addiction and life style, had led him to this path to his conviction in this action.

Fellows acknowledges that being in a detention facility has given him a new resolve to leave this life behind and begin a more responsible and mature way of living. Commensurate to a young man of 20 years of age. The full acceptance of his actions. The insight into his previous way of living and the new life he wishes to create.

Fellows does not believe he is a risk to re-offend. This statement may sound hollow to the court based on his past, but he offers that with a new found resolve and to act more like a mature individual he hopes and prays that with the proper resolve, he will continue to lead a law abiding and fruitful life.

He truly regrets his poor judgement. He also wants to provide a better life for himself and become a productive member of society. Therefore, at least two of the goals of sentencing under section 5335(a) impacting on the defendant have been achieved --- deterrence and rehabilitation.

### III. SENTENCING

The defendant was interviewed by the probation officer and verbally accepted responsibility for his roles in the offenses. Although the defendant is not minimizing the seriousness of the offense, it should also be stressed, and can be easily ascertained, that defendant has not had significant contact with Police. His participation in this action was to fully cooperate with the Government and Case Agents, he now faces the full impact of the United States Government in which has a far greater consequence than that of a State Court. The defendant might be eligible for safety valve under USSG §5C1.2. It is respectfully submitted that sentenceFellows to the minimum commensurate with his actions, remorse, acceptance of responsibility, acknowledgment of his drug addiction and resolve to do better. That is when taking into consideration these underlying facts and circumstances, would be of benefit to no one and would serve no useful purpose.

Fellows requests that the Court look to the kinds of sentences available. As noted above, the defendant requests this Court to consider a sentence that is sufficient, but not greater than necessary to fulfill the requirements of 18 U.S.C., section 3553(a). While looking to the nature and circumstances of the offense, this Court can conclude that;

1) he has timely accepted responsibility for his actions and
2) Austin Thompson should be held to some form of responsibility for his actions leading up to his death and
3) his actions after he was taken into custody and while he has been awaiting Disposition of this action. The time he spent behind bars,
4) he is 26 years of age.

In reviewing the history and characteristic of the defendant, this Court can resolve itself of the fact thatFellows,

1) is remorseful,
2) is resilient in his desire to better himself.

In determining the kinds of sentences available, this Court is not limited in what factors it may consider. The defendant might be eligible for safety valve under USSG §5C1.2;

Fellows can be rehabilitated and he is not beyond saving. This request in no way means to downplay the seriousness of the offense herein, but the crime involved would not be diminished and the sentence imposed by the Court would still fit the crime.

## IV. CONCLUSION

For the above stated reasons, it is respectfully requested that this Court impose a fair and just sentence, a sentence that would not demean the seriousness of the offense, yet one that is wise and just for the betterment of Devonte Fellows.

Respectfully submitted,

/s/ John P. Luskin
───────────────────────────

JOHN P. LUSKIN
Attorney for Defendant
5252 Meadow Wood Blvd.
Suite 121
Cleveland, Ohio 44124
(216) 513-6099

Supreme Court No. 0040158

SERVICE

A copy of the foregoing Sentencing Memorandum was provided to Michelle Beppler, Esq., Acting United States Attorney and Peter Daly, Esq., and Christopher Joyce, Esq., Assistant United States Attorneys was forwarded via the Court's Electronic Filing System this 27th day of June 2022.

/s/ John P. Luskin
_____
JOHN P. LUSKIN
Attorney for Defendant